```
                UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
                      Alexandria Division
```

CENTRAL SOURCE LLC,  )
    Plaintiff,  )
                                                                      )
        v.                                       )  Civil Action No. 1:16cv465
                                                  )
FREEANNUALCREDITREPORT2014.COM,  )
et al.,  )
    Defendants.  )

## REPORT AND RECOMMENDATION

This matter comes before the Court on Plaintiff's Motion for Default Judgment. (Dkt. 17.) After a representative for defendants failed to respond to plaintiff's motion or to appear at the hearing before the undersigned Magistrate Judge on December 2, 2015, the undersigned took plaintiff's Motion under advisement.[1]

### I. INTRODUCTION

**A. Background**

On April 26, 2016, plaintiff Central Source LLC filed this action <u>in rem</u> against twenty defendant domain names, collectively the "Domain Names" or "defendants."[2] (Compl. 1.)

---

[1] The record before the Court includes the Complaint ("Compl.") (Dkt. 1), the Amended Complaint ("Am. Compl.") (Dkt. 4), Plaintiff's Memorandum of Law in Support of its Motion for Order to Publish Notice of Action ("Memo. Serv. by Pub.") (Dkt. 6), Declaration of Ari S. Meltzer ("Meltzer Decl.") (Dkt. 6-1), Plaintiffs' Motion for Default Judgment ("Mot. Default J.") (Dkt. 17), Memorandum of points and authorities in Support of Plaintiff's Motion for Entry of Default Judgment ("Mem. Supp. Mot. Default J.") (Dkt. 18), and all attachments and exhibits submitted with those filings.

[2] The complaint initially contained 20 domain name defendants but 10 of those defendants have been dismissed from this action. (Dkts. 4, 10, 14). The remaining domain name defendants are freeannualcreditreport2014.com, freeannualcreaditreport.com, annuslcreditreport.com, anniualcreditreport.com, annyalcreditreport.com,

1

Plaintiff alleges that the Domain Names, which feature plaintiff's AnnualCreditReport mark and are confusingly similar to plaintiff's mark and were registered with a bad faith intent to distribute computer viruses or "malware" or to collect visitors' personal information for illegal uses. (Am. Compl. ¶ 2-4.) Plaintiff therefore brought suit alleging violations of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and trademark infringement under the Lanham Act, 15 U.S.C. §1114(1)(a). (Id. at ¶ 1.) Plaintiff now seeks default judgment against defendants in rem and an order directing that the Domain Names be transferred to plaintiff. (Mot. Default J. 2.)

### B. Jurisdiction and Venue

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it involves a federal question arising under the ACPA, 15 U.S.C. § 1125(d), and the Lanham Act, 15 U.S.C. §1114(1)(a), which are laws relating to trademarks.

This Court has in rem jurisdiction over the Domain Names, pursuant to 15 U.S.C. § 1125(d)(2)(A), because plaintiff has alleged violations of its trademark, plaintiff cannot obtain in personam jurisdiction over a person who would have been a

---

annualcreditreoport.com, freeannalcreditreport.com, annualcreditreporty.com, annualcredotreport.com, and annualcteditreport.com.

defendant because the listed registrant of the Domain Names is either a privacy service or a fictitious person/entity. (Am. Compl. ¶20.)

Venue is proper in this judicial district under 15 U.S.C. § 1125(d)(2)(C) because the.COM domain name registry operator, Verisign, Inc., is located in this district. (Id. at ¶22.)

### C. Service of Process

A plaintiff filing an action under the ACPA must provide notice of the action to the owner/registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)-(B). Sufficient notice of an in rem action is established if the Court finds that the owner (1) is not able to obtain in personam jurisdiction over a person who would have been a defendant, in this case the registrant; and (2) through due diligence was not able to find a person who would have been a defendant by both (a) sending notice of the alleged violation and intent to bring this action to the registrant of the domain name at the postal and email address provided by the registrant to the registrar, and (b) publishing notice of the action as the Court may direct after filing the action. 15 U.S.C. § 1125(d)(2)(A)(ii).

The undersigned concludes that plaintiff cannot obtain in personam jurisdiction over the registrant of Domain Names. Plaintiff's complaint thus satisfies the threshold requirement of Section 1125(d)(2)(A)(ii)(I). (Am. Compl. ¶20.)

3

Plaintiff has also attempted to contact the registrant or the person/entity in possession of the Domain Names. (Memo. Serv. by Pub. 5). On July 7, 2016, plaintiff provided the current registrant(s) of the Domain Names with notice of the alleged violations and plaintiff's intent to proceed in rem under the Anticybersquatting Act, which included a copy of the Complaint.(Meltzer Decl., Att. 1-2). On July 11, 2016, plaintiff filed a Motion for Order to Publish Notice of Action, which this Court granted on July 13, 2016. (Dkts. 5 and 8.) On July 28, 2016, plaintiff filed a declaration of Ari Meltzer providing proof that notice of this action was published in The Washington Post. (Dkt. 9-1.) Therefore, the requirements of Section 1125(d)(2)(A)(ii)(II) have been satisfied, and service of process is deemed complete. See 15 U.S.C. § 1125 (d)(2)(B).

### D. Grounds for Default Judgment

To date, no party with an interest in the Domain Names has appeared or otherwise participated in these proceedings. On July 21, 2016, The Washington Post published a notice of this action, which informed parties with an interest in defendants of the need to respond in this case. (Dkt. 9-1.) No party responded on behalf of the Domain Names within the time permitted by the Federal Rules of Civil Procedure, so plaintiff requested entry of default. (Dkt. 11.) On September 22, 2016, the Clerk of this Court entered default as to <freeannualcreditreport2014.com>,

4

\<freeannualcreaditreport.com\>, \<annuslcreditreport.com\>, \<anniualcreditreport.com\>, \<snnualcreditreport.com\>, \<annyalcreditreport.com\>, \<annualcreditreoport.com\>, \<freeannalcreditreport.com\>, \<annualcreditreporty.com\>, \<annualcredotreport.com\>, and \<annualcteditreport.com\>, pursuant to Federal Rule of Civil Procedure 55(a). (Dkt. 13.)[3]

Plaintiff filed a Motion for Default Judgment on October 27, 2016. (Dkt. 17.) The undersigned held a hearing on plaintiff's motion on December 2, 2016, at which no representative for the Domain Names appeared. (Dkt. 20.) Finding this matter uncontested, the undersigned took plaintiff's Motion under advisement to issue this Report and Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and the record in this case, the undersigned finds that plaintiff has established the following facts.

Plaintiff Central Source LLC is a corporation organized and existing under the laws of Delaware, with a principal business address of P.O. Box 105283, Atlanta, Georgia 30348. (Am. Compl. ¶ 5.) Central Source was created in 2004 to provide consumers with a secure means to request and obtain a free credit report

---

[3] After the Clerk's Entry of Default, defendant \<snnualcreditreport.com\> was voluntarily dismissed from the case on September 28, 2016. (Dkt. 14.)

once every 12 months in accordance with the Fair and Accurate Credit Transactions Act, 15 U.S.C. §1681j. (Id. at ¶ 25.) Central Source provides this service through a website at <www.annualcreditreport.com> and it is the only service authorized by the U.S. Federal Trade Commission to provide this service. (Id. at ¶ 26.) Plaintiff registered the annualcreditreport.com domain name on June 25, 2004, and it has registered and now owns more than 600 domain names representing typographical errors of "AnnualCreditReport" as a defensive measure to protect consumers by limiting cybersquatting of similar domain names. (Id. at ¶¶ 27, 28.) As a result of its promotion by Central Source and the U.S. Federal Trade Commission, along with substantial media coverage, consumers associate the AnnualCreditReport mark with Central Source. (Id. at ¶¶ 29, 30.)The AnnualCreditReport service was launched for public use on November 30, 2004 and the AnnualCreditReport mark is also registered on the Principal Trademark Register of the U.S. Patent and Trademark Office under registration number 4152650. (Id. at ¶¶ 31, 42, Ex. 14.)  This registration of the AnnualCreditReport mark is prima facie evidence of the validity of the mark, of Central Source's ownership of the mark, and of Central Source's exclusive right to use of the mark in U.S. commerce. (Id. at ¶ 43.)

6

The defendant Domain Names represent typographical errors of the AnnualCreditReport mark and use of defendant Domain Names reflect a type of cybersquatting known as "typosquatting," or the registration or use of a domain name that represents a typographical error of a legitimate site. (Id. at ¶ 46.) The Domain Names appear to have been registered for the purpose of obtaining Internet visitors when such visitors make a typographical error while attempting to access <www.annualcreditreport.com>. (Id. at ¶ 47.) The registrants of Domain Names registered the defendant domain names without plaintiff's consent or agreement. (Id. at ¶50, 52.) Plaintiff contends the registrant of the defendant domain names registered the Domain Names with intent to divert consumers away from Central Source's online location for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the defendant domain names and sites displayed through the use of defendant domain names. (Id. at ¶ 54.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F.

7

Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate plaintiff's claim against the standards of Federal Rule of Civil Procedure 12(b)(6).

### A.   Legal Standard

The ACPA allows the owner of a mark to file an in rem civil action against a domain name if the domain name violates the owner's trademark rights, and if the owner of the mark satisfies certain procedural provisions. 15 U.S.C. § 1125(d)(2)(A). These procedural provisions include establishing that the Court lacks in personam jurisdiction over the defendants, or that the plaintiff has been unable to locate the defendants through due diligence. Id. § 1125(d)(2)(A)(ii). In an in rem action, the remedies are limited to forfeiture, cancellation, or transfer of the infringing domain name to the owner of the mark. Id. § 1125(d)(2)(D).

Thus, to be entitled to relief in rem, the owner of a mark must prove a violation of "any right of the owner of a mark registered in the Patent and Trademark Office" or protected under subsections 1125(a) or (c). Id. § 1125(d)(2)(A)(i). The phrase "any right of the owner of a mark" encompasses claims brought under Section 1125(d)(1). Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 224, 228, 232 (4th Cir. 2002).

Plaintiff seeks relief under Section 1125(d)(1). That provision creates civil liability for registering, trafficking

8

in, or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a bad faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). Thus, to establish such a cybersquatting violation, a plaintiff must prove: (1) plaintiff's ownership of a valid and protectable mark; (2) defendant's use of a domain name that is "identical or confusingly similar" to plaintiff's mark; and (3) defendant's bad faith intent to profit from the mark. See id.

### 1. *Plaintiff Possesses a Valid and Protectable Mark*

The ACPA protects both registered marks as well as unregistered common law marks. See 15 U.S.C. §§ 1125(a), 1125(d)(2)(A)(i); B & J Enters. v. Giordano, 329 F. App'x 411, 416 (4th Cir. 2009). The undersigned finds that the plaintiff has sufficiently pled protectable rights in the AnnualCreditReport mark as alleged in the Complaint. Plaintiff's registration of the AnnualCreditReport mark is prima facie evidence of the validity and distinctiveness of the mark. America Online, Inc. v. AT&T Corp., 243 F.3d 812, 816 (4th Cir. 2001). Further, through promotion of AnnualCreditReport by plaintiff, the Federal Trade Commission, and third parties, the AnnualCreditReport mark has become famous or distinctive throughout the U.S. in connection with plaintiff's services. (Am. Compl. ¶¶30, 39.) Plaintiff has consequently obtained common law rights in the AnnualCreditReport mark. See U.S.

9

Search, LLC v. U.S. Search.com, Inc., 300 F.3d 517, 523 (4th Cir. 2002). Therefore, plaintiff is entitled to enforce the provisions of Section 1125(d) against any domain name that violates its rights in that mark.

### 2. *Defendants Registered Confusingly Similar Domain Names*

The undersigned finds that plaintiff's Complaint sufficiently demonstrates that the Domain Names are confusingly similar to the mark in which plaintiff possesses protectable rights. The confusing similarity standard is satisfied when a domain name is virtually identical to the plaintiff's mark. See Agri-Supply Co. v. Agrisupply.com, 457 F. Supp. 2d 660, 663 (E.D. Va. 2006). Here, each of the defendant Domain Names includes a misspelling of the AnnualCreditReport mark to take advantage of common errors made when consumers attempt to reach <www.annualcreditreport.com>. Thus, the facial similarity of the Domain Names to plaintiff's mark is clear. Therefore, plaintiff has alleged sufficient facts to satisfy this requirement of the ACPA.

### 3. *Defendants Have Acted with a Bad Faith Intent*

Finally, the undersigned finds that plaintiff's Complaint pleads facts evidencing defendants' bad faith intent to profit from plaintiff's mark. Under the ACPA, bad faith intent may be shown by weighing nine factors. 15 U.S.C. § 1125(d)(1)(B)(i). The factors are given to courts as a guide and need not be

10

exhaustively considered in every case. <u>Lamparello v. Falwell</u>, 420 F.3d 309, 319-20 (4th Cir. 2005). In pertinent part, the factors relevant to a finding of bad faith include: a defendant's lack of intellectual property rights in the domain name; a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark due to a likelihood of confusion as to affiliation or endorsement of the site; a defendant's provision of false contact information when applying for registration of the domain name; and a defendant's registration of multiple domain names that the defendant knows are identical to marks of another which are distinctive at the time of registration. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I), (V), (VII), (VIII).

Based on these factors, the undersigned finds that defendants have acted with a bad faith intent to profit from plaintiff's mark in violation of the ACPA. The registrants of defendant Domain Names do not have any valid trademark or intellectual property rights in the AnnualCreditReport mark or the Domain Names within the meaning of 15 U.S.C. §1125(d)(1)(B)(i)(I). (Am. Compl. ¶¶46, 47.) The Domain Names do not appear to reflect the legal names of the registrants within the meaning of 15 U.S.C. §1125(d)(1)(B)(i)(II). (<u>Id.</u> at ¶ 51.) The registrants of defendant Domain Names has not engaged in the bona fide noncommercial or fair use of plaintiff's mark within

11

the meaning of 15 U.S.C. §1125(d)(1)(B)(i)(IV). (Id. at ¶ 52.) The registrants of defendant Domain Names have registered and used the Domain Names with intent to divert consumers away from plaintiff's online location, for financial gain, by creating a likelihood of confusion as to the source of the Domain Names within the meaning of 15 U.S.C. §1125(d)(1)(B)(i)(V). (Id. at ¶ 54.) Further, the registrants have acquired more than one domain name known to be confusingly similar to the marks of others within the meaning of 15 U.S.C. §1125(d)(1)(B)(i)(VIII) as shown by the various domain names involved in this action. These factors demonstrate a bad faith intent to profit from plaintiff's protected mark.

### B. Conclusion

Because the remaining procedural provisions of 15 U.S.C. § 1125(d) have been satisfied, the Court may order the transfer of the Domain Names to plaintiff. 15 U.S.C. §§ 1125(d)(1)(C), 1125(d)(2)(D)(i).

### IV. REQUESTED RELIEF

Plaintiff seeks an order that Verisign, Inc. the operator of the .COM registry, change the register of record for each of the Domain Names to plaintiff's registrar of choice, GoDaddy.com LLC, and further order that GoDaddy.com LLC take the necessary steps to have plaintiff listed as the registrant for the Domain Names. (Am. Compl. 15-16; Mem. Supp. Mot. Default J. 14-15.)

Additionally, plaintiff requests that the Court dismiss the second count of in rem trademark infringement without prejudice. (Id.)

## V. RECOMMENDATION

For the reasons outlined above, the undersigned recommends that default judgment be entered in favor of plaintiff Central Source LLC with respect to the Domain Names for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The undersigned further recommends that Verisign, Inc. be required to transfer the Domain Names to plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(C). To that end, the undersigned recommends that the district judge enter an order containing the specific language requested by plaintiff on page one and two of the proposed order attached to plaintiff's Motion for Default Judgment.

VI. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
_____
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

December 13, 2016
Alexandria, Virginia

14